**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**GEORGE CARTY,**

                              **Plaintiff,**

   vs.                                                  **8:18-CV-01165
(MAD/CFH)**

**WELLS FARGO BANK,**

                              **Defendant.**

---

**APPEARANCES:**                                    **OF COUNSEL:**

**GEORGE CARTY**
9 Hemlock Drive
Schroon Lake, New York 12870
Plaintiff *pro se*

**REED SMITH LLP**                           **TALIA NELLA FIANO, ESQ.**
599 Lexington Avenue, 22nd Floor
New York, New York 10022
Attorneys for Defendant
Wells Fargo Bank, N.A.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On September 26, 2018, *pro se* plaintiff George Carty ("Plaintiff") commenced this action against Defendant Wells Fargo Bank ("Defendant") by alleging that Defendant had committed "Mortgage Fraud." Dkt. No. 1-1 at 1. As it is unclear whether Plaintiff is alleging "Mortgage Fraud" with respect to Defendant's role in the loan origination or in the foreclosure action, in light of Plaintiff's *pro se* status, the Court will address both possible causes of action. *Id.* Plaintiff seeks $2,000,000 in damages and an "automatic stay until the case is resolved." Dkt. No. 22 at 3.

Currently before the Court is Defendant's motion to dismiss, filed on March 25, 2019. *See* Dkt. No. 20-13 at 6. On April 17, 2019, Plaintiff opposed Defendant's motion to dismiss by baldly re-asserting that Defendant had committed fraud. *See* Dkt. No. 22 at 1-3. On April 25, 2019, Defendant responded to Plaintiff's opposition and requested that the Court dismiss Plaintiff's complaint with prejudice. *See* Dkt. No. 23 at 1.

## II. BACKGROUND

On April 14, 2007, Plaintiff (along with non-parties Kathleen Carty and Maryann Bleach) executed a Home Equity Line of Credit Mortgage with Defendant Wells Fargo (then Wachovia Bank), under which Defendant agreed to lend Plaintiff up to $145,000 with Plaintiff's property at 9 Hemlock Lane, Schroon Lake, New York, acting as collateral.[1] *See* Dkt. No. 20-11 at 25. In May 2008, Plaintiff defaulted on his mortgage. *See* Dkt. No. 20-3 at 36. Consequently, on April 3, 2009, Defendant commenced a foreclosure action. *See* Dkt. No. 20-4 at 2. Plaintiff responded on April 22, 2009, by baldly asserting that "the loans described in the complaint . . . are fraudulent." Dkt. No. 20-5 at 2-3. In a December 7, 2009 order, the Essex County Supreme Court struck Plaintiff's answer to the foreclosure action and granted Wells Fargo's motion for summary judgment. *See* Dkt. No. 20-7 at 3-4. On February 25, 2010, the Essex County Supreme Court granted a motion for judgment of foreclosure and sale on Plaintiff's property. *See* Dkt. No. 20-8 at 8. Plaintiff did not appeal the state court judgment, and the foreclosure sale was scheduled for October 1, 2018. *See* Dkt. No. 20-9 at 2. On September 26, 2018, Plaintiff commenced this action against Defendant. *See* Dkt. No. 1 at 1.

---

[1] Wells Fargo acquired Wachovia Bank shortly after the state foreclosure action commenced. *See* Dkt. No. 20-2 at 3. For the sake of clarity, the Court will refer to the plaintiff in the original foreclosure action as "Wells Fargo," even when referring to events or transactions that transpired prior to the Wells Fargo-Wachovia merger.

## III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). However, this presumption of truth does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"

*Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

In addition to the foregoing standards, Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, because the court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a 'license to base claims of fraud on speculation and conclusory allegations,' . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal citation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted).

4

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

**B.** *Younger* **Abstention**

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). *Younger*

recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. *Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted). Although *Younger* itself dealt only with a pending criminal proceeding, "*Younger* abstention has been extended to civil proceedings, . . . and state administrative proceedings, so long as the state court has a means of reviewing constitutional claims." *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir. 1990) (internal citations omitted).

"In the paradigm situation calling for *Younger* restraint, the state defendant brings a federal action challenging the statute [which is simultaneously being applied against him]." *Fernández v. Trías Monge*, 586 F.2d 848, 851 (1st Cir. 1978); *see e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11 (1987) (federal plaintiff seeking to enjoin state plaintiff from enforcing a judgment against him); *Moore v. Sims*, 442 U.S. 415, 423 (1979) (federal plaintiffs seeking to enjoin state proceedings against them for child abuse). As noted by the Sixth Circuit, "*Younger* cases generally have a common procedural posture." *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir. 2010). "In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings." *Id.* at 894-95 (quoting *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984)).

*Younger* is not based on an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted); *see also Benavidez v. Eu*, 34 F.3d 825, 829 (9th Cir. 1994) ("*Younger* abstention is *not*

6

jurisdictional, but reflects a court's prudential decision not to exercise jurisdiction which it in fact possesses"); *Schachter v. Whalen*, 581 F.2d 35, 36 n.1 (2d Cir. 1978) ("*Younger* abstention goes to the exercise of equity jurisdiction, not to the jurisdiction of the federal district court as such to hear the case") (citations omitted). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> "Our Federalism" in its ideal form, as the Supreme Court explained in *Younger*, strives towards a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. In recognition of this balance of interests, *Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction. Giving states the first opportunity . . . to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] "the competence of the state courts" and acknowledging the dignity of states as co-equal sovereigns in our federal system.

*Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

With this doctrinal framework in mind, the Second Circuit has instructed that "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Id.* "Courts in this circuit have held that *Younger* abstention bars federal courts from exercising jurisdiction over pending state-court foreclosure actions." *Santana v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-1424, 2016 WL 3149731, *2 (N.D.N.Y. June 3, 2016) (collecting cases); *see also Kelmetis v. Fed. Nat'l Mortg. Ass'n*, No. 116-CV-00246, 2017 WL 395120, *3-5 (N.D.N.Y. Jan. 27, 2017). "However,

the Court must first determine whether the state-court foreclosure proceeding is in fact pending." *Santana*, 2016 WL 3149731, at *2.

Plaintiff's allegation of "Mortgage Fraud" challenges Defendant's standing to foreclose on his property. Dkt. No. 1-1 at 1. Additionally, Plaintiff's opposition to Defendant's motion to dismiss acknowledges the existence of the state proceedings. *See* Dkt. No. 22 at 3 (requesting an "automatic stay until the case is resolved"). The Court's review of the state court's proceedings indicates that on December 7, 2009, the state court granted Wells Fargo's motion for summary judgment, struck and dismissed Plaintiff's answer, and appointed a referee to oversee the foreclosure. *See* Dkt. No. 20-3 at 3. Moreover, although the record indicates that on February 25, 2010, the state court granted a motion for judgment of foreclosure and sale on Plaintiff's property, *see* Dkt. No. 20-8 at 8, and despite the completed sale of Plaintiff's property on October 1, 2018, Defendant submits that the foreclosure proceeding remains pending, *see* Dkt. No. 20-13 at 6, 10.

Thus, to the extent that the state court action does remain pending, granting the declaratory relief that Plaintiff requests would interfere with the state court's jurisdiction. *See Kelmetis*, 2017 WL 395120, at *4. Plaintiff's request for an "automatic stay" concerns Defendant's ability to foreclose on his property. Dkt. No. 23 at 3. Therefore, the Court must abstain from granting Plaintiff's requested relief. *See Kelmetis*, 2017 WL 395120, at *4 (holding that *Younger* barred the court from "granting the declaratory relief [p]laintiff requests [as the requested relief] . . . concern[s] [d]efendants' ability to foreclose" on plaintiff's property); *see also Santana*, 2016 WL 3149731, at *1-2 (holding that *Younger* barred the court from issuing an order "declaring the foreclosure void" and granting "injunctive relief holding the mortgage void and unenforceable"); *Clark v. Bloomberg*, No. 10-CV-1263, 2010 WL 1438803, *2 (E.D.N.Y. Apr. 12, 2010) ("Both sets of state-court proceedings are pending, both concern the disposition of real

property and hence implicate important state interests, and there is no reason to doubt that the state proceedings provide Clark with an adequate forum to make the arguments he seeks to raise in this court. Abstention doctrine thus bars Clark's claims to enjoin the foreclosure action and the eviction proceedings").

Although *Younger* does not bar the Court from reviewing Plaintiff's claim for damages, the Court must dismiss this claim on alternative grounds, discussed below. *See Santana*, 2016 WL 3149731, at *2 ("The Court must still consider the motion to dismiss as it applies to Plaintiff's breach of contract and fraud claims, since those claims seek monetary damages"); *Clark*, 2010 WL 1438803, at *3 ("The abstention principle enunciated in *Younger v. Harris* does not require dismissal of Clark's claims for damages").

**C.**     ***Rooker-Feldman* Doctrine**

Alternatively, to the extent that the state-court foreclosure action is final, the Court is barred from reviewing it under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (citations omitted). The doctrine is grounded in the principle that 28 U.S.C. § 1257 vests jurisdiction to hear appeals from the highest court of each state exclusively in the United States Supreme Court. *See id.* at 292 (citations omitted). District courts may not, therefore, adjudicate what are in essence *de facto* appeals from state court judgments. *See id.* (citations omitted). The application of the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 200) (citing *Exxon*, 544 U.S. at 284).

"Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Feinstein v. The Chase Manhattan Bank*, No. 06-CV-1512, 2006 WL 898076, *2 (E.D.N.Y. Apr. 5, 2006); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars [plaintiff's] claim"); *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 361 (2d Cir. 2011) (dismissing appeal from the district court's dismissal of claim seeking to reverse state foreclosure action); *Ashby v. Polinsky*, 328 Fed. Appx. 20, 21 (2d Cir. 2009) (same); *Ford v. U.S. Dep't of Treasury I.R.S.*, 50 Fed. Appx. 490, 491 (2d Cir. 2002) (same). Based on the foregoing, the Court finds that, to the extent that Plaintiff seeks an order declaring the state-court judgment void, the Court lacks subject-matter jurisdiction over those claims.

While the *Rooker-Feldman* doctrine bars district courts from reviewing claims for declaratory and injunctive relief from state-court judgments, it "does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, as the district court can determine damages liability without reviewing the propriety of the state court judgment." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 Fed. Appx. 20, 21 (2d Cir. 2016) (citing *Vossbrinck*, 773 F.3d at 427-28). However, as discussed below, Plaintiff's request for damages stemming from his fraud claim must be dismissed on several alternative grounds. *See Worthy-Pugh*, 664 Fed. Appx. at 22 (holding that the district court properly dismissed the plaintiff's request for damages "on the alternate ground of res judicata"); *see also*

*Vossbrinck*, 773 F.3d at 427-28 (holding that the district court properly dismissed the plaintiff's request for damages as "barred by collateral estoppel and [for being] time-barred").

**D. Res judicata**

Even if Plaintiff could escape the confines of the *Rooker-Feldman* doctrine, his claims are barred under the doctrine of *res judicata*, or claim preclusion, which provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284-85 (2d Cir. 2000) (citations omitted).

"The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law." *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 WL 141053, *6 (S.D.N.Y. Jan. 22, 2007) (quotation and citations omitted). Accordingly, this Court's analysis "is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192-93 (1981)). "Under the doctrine of res judicata, a final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof. The rule applies not only to claims litigated but also to claims that could have been raised in the prior litigation." *Shelley v. Silvestre*, 66 A.D.3d 992, 993 (2d Dep't 2009) (quotation and other citation omitted).

To begin, the state foreclosure proceeding was adjudicated on the merits and resulted in the sale of the property at a foreclosure auction on October 1, 2018. *See* Dkt. No. 20-13 at 6.

11

Next, the requirement of privity is similarly met: the parties in the state-court action were the same as those named in the matter presently before the Court. *See* Dkt. No. 20-8 at 2. Lastly, Plaintiff's claims in the present matter are identical to the claims that he asserted in his answer to the foreclosure action, which the state court struck and dismissed. *See* Dkt. No. 22 at 1-3; Dkt. No. 20-5 at 2. Based on the foregoing, the Court finds that Plaintiff's claims are barred by the doctrine of *res judicata*. *See Gurdon*, 2016 WL 721019, at *9 (holding that "allegations of fraud in an underlying mortgage agreement are barred by *res judicata*, as the proper time to raise those claims was in the state foreclosure proceeding").

E.  **Collateral Estoppel**

Similarly, Plaintiff's claim is also barred by the doctrine of collateral estoppel. Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Burgos*, 14 F.3d at 792 (quoting *Ryan v. N.Y. Tel.*, 62 N.Y.2d 494, 500 (1984)). In order for collateral estoppel to apply, there must be "an identity of issue which has been necessarily decided in the prior action and is decisive of the present action," and "there must have been a full and fair opportunity to contest the decision now said to be controlling." *Id.* (quoting *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71 (1969)).

In this case, the state court made a final determination on the merits of the claims at issue when it granted the motion for judgment of foreclosure and sale on February 25, 2010. *See* Dkt. No. 20-8 at 2-8. In that case, the state court struck Plaintiff's answer to the original foreclosure action, which raised identical issues of fraud that Plaintiff raises in the present matter. *See* Dkt. No. 20-7 at 3. Thus, Plaintiff has had a full and fair opportunity to be heard, contest the decision,

and participate in the litigation. *Id.* As such, the Court finds that, in the alternative, collateral estoppel precludes Plaintiff's claim.

F.     **Statute of Limitations**

The determination of when a statute of limitations began to run is generally a factual one. *See Bice v. Robb*, 324 Fed. Appx. 79, 81 (2d Cir. 2009). Thus, a "motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) (citation omitted). However, "where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

"Under New York law, the statute of limitations for a fraud claim is 'the longer of either six years from when the cause of action accrued or two years from the time plaintiff discovered the fraud or could have with reasonable diligence discovered it.'" *Id.* at 272 (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 973 (2d Cir. 1992)); *see also Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 313 n.2 (S.D.N.Y. 2014).

In the present matter, as it is unclear whether Plaintiff is alleging "Mortgage Fraud" with respect to the loan origination or to the foreclosure action, in light of Plaintiff's *pro se* status, the Court will address both possibilities. Dkt. No. 1-1 at 1. The first possible cause of action (the allegedly fraudulent mortgage origination) accrued on April 14, 2007. *See* Dkt. No. 20-3 at 21. Furthermore, Plaintiff indicates that he has been aware of this alleged fraud since 2008. *See* Dkt. No. 1 at 1 ("I sold house in 2008 for 200000 and my lawyer informed of this nightmare"). The second possible cause of action (the allegedly fraudulent foreclosure action) accrued on April 25, 2009, when Wells Fargo served Plaintiff with a summons to the foreclosure action. *See* Dkt. No.

20-4 at 2. Plaintiff filed his claim in federal court on September 26, 2018, far more than six years after either possible cause of action accrued and far more than two years after Plaintiff became aware of either instance of alleged fraud. *See* Dkt. No. 1 at 1. Thus, under either measurement, both of Plaintiff's possible fraud claims are time-barred.

**G.      Leave to amend**

Although a district court should generally "not dismiss a *pro se* complaint without granting the plaintiff leave to amend, dismissal is appropriate where leave to amend would be futile." *Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In the present matter, amendment would be futile as it does not appear that Plaintiff has any viable federal claims that he could assert by amending his complaint. *See Cuoco*, 222 F.3d at 112 (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[ ] that the plaintiff has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe"). As discussed above, Plaintiff's claims that are not barred by the *Younger* or *Rooker-Feldman* doctrines are barred by *res judicata*, collateral estoppel, and the statue of limitations, and therefore, any amendment would be futile. *See Kelmetis*, 2017 WL 395120, at *4; *see also Santana*, 2016 WL 3149731, at *5 ("The Court will dismiss the Plaintiff's claims for injunctive relief with prejudice to repleading in this Court pursuant to the *Younger* doctrine, as repleading such claims here would be futile"); *see also Haynie v. N.Y. Hous. Auth.*, No. 14-CV-5633, 2015 WL 502229, *3 (E.D.N.Y. Feb. 5, 2015) (citation omitted) ("Here, given that Haynie's complaint is, at bottom, a challenge to his state court eviction over which the Court does not have jurisdiction, amending the complaint would be futile. The Court therefore declines to grant Haynie leave to amend his complaint"). Therefore, the Court dismisses Plaintiff's claims with prejudice.

## IV. CONCLUSION

For the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint with prejudice is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 13, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge